# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN W. RALSTON, JR., <br> Petitioner, <br><br> vs. <br><br> DEPARTMENT OF PAROLE & PROBATION, <br> Respondent. | ) <br> ) <br> ) <br> ) Civil Action No. 12-1844 <br> ) Chief Magistrate Judge Maureen P. Kelly <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

John W. Ralston, Jr. ("Petitioner"), a state prisoner, proceeding pro se, has filed what he captioned as a "LETTER PERTITIONER [sic] REQUEST FOR A HABEAS CORPUS", ECF No. 1, which the Court construes as a Petition for Writ of Habeas Corpus By a Person in State Custody filed pursuant to 28 U.S.C. § 2254 (the "Petition"). ECF No. 1. By means of the Petition, he apparently seeks to challenge the denial of parole based upon his refusal to admit his guilt for sexual crimes, where the convictions for those crimes became final long ago, and also apparently seeks to challenge the taking away of his Z-Code status, which permits him to have a cell by himself.

As to the denial of parole, Petitioner does not carry his burden to show entitlement to federal habeas relief. Because Petitioner cannot challenge the taking away of his Z-Code status by means of a habeas petition, that claim will be dismissed as non-cognizable.

## I. FACTUAL HISTORY

Petitioner is currently serving a sentence of 22 ½ to 45 years for two counts of Involuntary Sexual Deviate Intercourse and one count of Incest.

Petitioner first became eligible for parole in 2012, and the Pennsylvania Board of Probation and Parole ("the Board") denied Petitioner parole on February 14, 2012. The Board provided the following reasons for its denial decision:

> YOUR NEED TO PARTICIPATE AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.
> YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS.
> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
> REPORTS, EVALUATIONS, AND ASSESSMENTS/LEVEL OF RISK INDICATES YOUR RISK TO THE COMMUNITY.
> YOUR FAILURE TO DEMONSTRATE MOTIVATION FOR SUCCESS.
> YOUR MINIMIZATION/DENIAL OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
> YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.

ECF No. 7-3. In addition, the Board indicated to Petitioner that at his next parole application and hearing, the Board would consider whether he successfully completed a treatment program for sex offenders; whether he received a favorable recommendation from the Department of Corrections and whether he received a clear conduct record. Id.

Petitioner then applied for parole a second time and on March 6, 2013, the Board again declined to release Petitioner on parole. The Board provided the following reasons for its denial decision:

> YOUR NEED TO PARTICIPATE AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.

> YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS.
> THE NEGATIVE RECOMMENDATION BY THE DEPARTMENT OF CORRECTIONS.
> YOUR DENIAL OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.

ECF No. 7-4. The Board indicated that upon Petitioner's next application for parole, it would consider whether Petitioner successfully completed a treatment program for sex offenders; and whether he received a favorable recommendation from the Department of Corrections and whether he received a clear conduct record. Id.

## II. PROCEDURAL HISTORY

Petitioner filed the instant Petition pro se. ECF No. 1. Respondent filed a Response, asserting that Petitioner was not entitled to any relief. ECF No. 7. Petitioner then filed a "MOTION, AND REPLY TO PAROLE BOARD, TO COURT," in which he sought a copy of all of the misconducts filed against him by the Department of Corrections and confirmed that he was making, inter alia, a Fifth Amendment claim against the Board for requiring him to admit his responsibility for the crimes. ECF No. 11. Petitioner also filed a "MOTION FOR AN ORDER COMPELLING DISCOVERY" by which he sought to have this Court order the Board to provide him with copies of all of his inmate grievances. ECF No. 12. Petitioner then filed an Amended Motion seeking discovery whereby he sought to have the Board produce to him all misconducts and all of his grievances and replies to his grievances. ECF No. 13. The Court denied all of Petitioner's requests for discovery. ECF No. 14. Petitioner then filed an interlocutory appeal to the United States Court of Appeals for the Third Circuit. ECF No. 15. Petitioner also filed a "Motion to Set A Side [sic] Judgment Dated July 17, 2013, Motion to Vacate Judgment '60B'",

3

which the Court construed as a Motion to Reconsider its July 17, 2013 order, and denied.  ECF Nos. 18 and 20.  Petitioner also filed in this Court "Letters," ECF No. 19, which the Court construed as a Motion to Stay this case and ordered the Board to file a Response, which it did. ECF No. 22.  The Court denied the Motion to Stay.  ECF No. 23.  Meanwhile, the Court of Appeals dismissed Petitioner's Interlocutory Appeal for failure to prosecute.  ECF No. 21.

Both parties have consented to have the Magistrate Judge exercise plenary jurisdiction.  ECF Nos. 9, 10.

### III. DISCUSSION

Petitioner appears to raise three issues in the Petition.  First, he claims that he need not take any sex offenders classes as required by the Board if not ordered to do so by a court.  ECF No. 1, ¶ 2.  Second, he claims that he cannot be forced to admit guilt as the Board is requiring him to do so, allegedly in violation of his Fifth Amendment rights.  Id. ¶ 3.  Third, Petitioner complains about the taking away of his Z-Code status.  Id. ¶ 4.

#### A. Federal Law Does Not Prohibit the Board from Requiring Petitioner to Take Sex Offenders Classes.

Petitioner contends that he cannot be required by the Board to take sex offenders classes unless a court has ordered him to do so.  The Board construes this argument as Petitioner claiming that the Board violated his due process rights for denying him parole based on his failure to take or complete sex offenders classes wherein Petitioner would be required to admit to the sex crimes that he was convicted of.  ECF No. 7 at 6.

A state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2254(a).  Smith v. Phillips, 455

U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d Cir. 1992). Violations of state law or procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before habeas relief may be granted. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991). A federal court's scope of review is limited as it does not sit to retry state cases *de novo* but examines the proceedings in the state tribunal to determine if there has been a violation of federal constitutional standards. Barefoot v. Estelle, 463 U.S. 880 (1983), superceded by statute on other grounds; Milton v. Wainwright, 407 U.S. 371 (1972).

Moreover, the Board is presumed to comply with the law. Garner v. Jones, 529 U.S. 244, 256 (2000) ("we presume the Board [of Pardons and Paroles of Georgia] follows its statutory commands and internal policies in fulfilling its obligations."); United States v. Aviles, 623 F.2d 1192, 1198 (7th Cir. 1980) ("the presumption of regularity attends official acts of public officers and the courts presume that their official duties have been discharged properly."). Thus, the Board's actions are presumptively legal. Hence, it is the burden of the Petitioner to show otherwise. Petitioner has failed to meet this burden.

### 1. A state law violation does not merit federal habeas relief.

To the extent that Petitioner is arguing in his first claim that the Board overstepped its state statutory authority to impose the requirement of Petitioner taking sexual offenders classes where no state court imposed such a requirement, the claim is simply not cognizable here in this federal habeas petition because it is a matter of state law violation at most and not a federal constitutional or federal statutory issue.[1] Smith v. Phillips.

---

[1] The separation of powers doctrine contained in the United States Constitution applies solely to the federal government. Sweezy v. New Hampshire, 354 U.S. 234, 255 (1957)("Moreover, this

(…footnote continued)

5

We note that Petitioner's underlying claim is simply incorrect as a matter of state law, the Board has independent statutory authority to impose any legal conditions it deems appropriate even if a sentencing court did not impose such conditions. See Standard Pa. Practice, § 137:243.[2] See also 59 Am. Jur. 2d Pardon and Parole § 94 ("The general rule is that a parole

---

Court has held that the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments."); Pittman v. Chicago Bd. of Educ., 64 F.3d 1098, 1102 (7th Cir. 1995) ("the federal Constitution does not prescribe any particular separation of powers, or other internal structure, of state government."); Ragsdale v. Turnock, 941 F.2d 501, 510 (7th Cir. 1991) ("separation [of power within the state government] is not a proper matter of federal judicial concern."); Shelton v. City Of College Station, 780 F.2d 475, 482 n.2 (5th Cir. 1986)("The guarantee of a republican form of government by the federal constitution does not impose the doctrine of separation of powers upon the states, so that without the adoption of the rule by a state itself there is no requirement of separation of powers in state government.").
    Nor does a mere violation of state law without an allegation of some sort of invidious discrimination (and no such allegation is made herein) violate the equal protection clause of the United States Constitution. Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489 (1955): ("The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."); Snowden v. Hughes, 321 U.S. 1, 11-12 (1944)("It was not intended by the Fourteenth Amendment and the Civil Rights Acts that all matters formerly within the exclusive cognizance of the states should become matters of national concern. A construction of the equal protection clause which would find a violation of federal right in every departure by state officers from state law is not to be favored."); Tauro v. Pennsylvania Dept. of Public Welfare, 206 F. App'x 152, 154 (3d Cir. 2006)("mere violation of a state law does not result in a due process violation. Even if the county solicitor was acting contrary to Pennsylvania law when collecting the child support arrears owed to DPW, that action alone would not violate the Due Process Clause.")(citation omitted); D.R. by L.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1376 (3d Cir. 1992) ("Thus, '[i]llegality under the state statute can neither add to nor subtract from [the] constitutional validity [of a state's actions].'")(quoting, Archie v. City of Racine, 847 F.2d 1211, 1216 (7th Cir. 1988))(some internal quotations omitted).

[2] Standard Pa. Practice, § 137:243 explains Pennsylvania law on parole as follows:

> The essence of "parole" is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. Because they are still subject to an extant term of imprisonment and are the focus of society's rehabilitative efforts, parolees are subjected to certain conditions that restrict their activities substantially beyond the ordinary restrictions imposed by law on private citizens.
> (…footnote continued)

may be granted upon such terms and conditions as the **granting power** may see fit so long as they are not immoral, illegal, or impossible of performance. In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements. . . . Parole boards have wide discretion in fashioning appropriate conditions of parole.") (emphasis added) (footnotes omitted).

### 2. Petitioner's Due Process rights were not violated.

Petitioner's claim that the Board improperly denied him parole because he did not take or did not successfully take the sexual offenders class is essentially a due process challenge. As the Board points out, there are two possible claims that Petitioner can be making. He can be making either a procedural due process claim or a substantive due process claim. Petitioner has not established that either due process right was violated.

#### a) Procedural Due Process

To the extent that Petitioner is making a procedural due process claim against the Board,

---

> The Board of Probation and Parole is vested with broad powers to fashion appropriate conditions of parole where they are intended to effectuate a parolee's rehabilitation and reintegration into society as a law-abiding citizen. The section of the Parole Act providing that when the Board of Probation and Parole considers a paroling action, it must first and foremost seek to protect the safety of the public envisions that restrictions can legitimately be placed on a parolee, similar to the restrictions legitimately placed on incarcerated persons, and those restrictions must relate to the goals of the Parole Act.
> . . . .
> To be valid, a condition of parole must have some significant connection to either the defendant's rehabilitation or the protection of public safety. When the Board of Probation and Parole imposes a condition of parole, which is really a lesser-included power within the general power to grant parole . . . .

(footnotes omitted).

it fails. Conducting a procedural due process analysis involves a two-step inquiry: the first question to be asked is whether the complaining party has a protected liberty interest within the contemplation of the Due Process clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). A liberty interest can arise in one of two ways: 1) it can be derived directly from the Due Process clause of the Federal Constitution or 2) it can arise from the state's statutory scheme. Asquith v. Department of Corrections, 186 F.3d 407, 408 (3d Cir. 1999) ("A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state.").

It is well settled law that the Due Process clause of the Federal Constitution does not of its own force create a liberty interest in parole. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (stating that, "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence" and distinguishing parole revocation which implicates a liberty interest, from parole release decisions which do not). Accordingly, if Petitioner is to assert a viable claim of procedural due process, he must show that the law of Pennsylvania has created a liberty interest in parole.

Hence, the Court turns to the question of whether Pennsylvania law creates a liberty interest in parole. It is well established that Pennsylvania state law does not create a liberty interest in parole. See, e.g., U.S. ex rel. Schiano v. Luther, 954 F.2d 910, 916 (3d Cir. 1992); Henry v. Bello, No. 92-4341, 1994 WL 27320, at *1 (E.D. Pa. Feb. 1. 1994)("However, the Pennsylvania Probation and Parole Act gives the parole board considerable discretion to decide

whether to grant parole, 61 P.S. § 331.21; therefore, the Commonwealth has not created a liberty interest in parole.").[3]

Having no liberty interest in being released on parole, Petitioner cannot succeed on his procedural due process claim.

### b) Substantive Due Process

In contrast to the focus of procedural due process on procedures, substantive due process prohibits certain government actions irrespective of the procedures which attend those actions. Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) ("The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities."), *abrogated on other grounds as recognized in*, United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392 (3d Cir. 2003).

The standards for analyzing a substantive due process claim appear to depend upon whether one is challenging legislative or executive action. See, e.g., Evans v. Secretary, Pa. Dept. of Corrections, 645 F.3d 650, 659 (3d Cir. 2011); Wagner ex rel. Wagner-Garay v. Fort Wayne Community Schools, 255 F.Supp.2d 915, 922 (N.D. Ind. 2003) ("However, the appropriate standard for analyzing a substantive due process claim depends on whether

---

[3] See also Gregg v. Smith, No. 97-4894, 1998 WL 309860, at *2 (E.D. Pa. June 10, 1998) ("plaintiff has no protected liberty interest in receiving parole which is discretionary in Pennsylvania...."); McFadden v. Lehman, 968 F.Supp. 1001, 1004 (M.D. Pa. 1997) ("Pennsylvania has not created an enforceable liberty interest in parole. . . ."); Nelson v. Miranda, No. 96-CV2854, 1997 WL 327381, at *5 (E.D. Pa. May 6, 1997) ("Applying the *Sandin* methodology to the case at hand, we find that Pennsylvania law has not created a protectible liberty interest in parole hearing.").

9

'legislation or a specific act of a governmental officer is at issue.'") (quoting Dunn v. Fairfield Community High School Dist. # 225, 158 F.3d 962, 965 (7th Cir. 1998)). The parole board is an executive branch agency. See Goodman v. McVey, 428 F. App'x 125, 126 (3d Cir. 2011). The standard of review for a substantive due process challenge to executive branch action requires that the aggrieved person establish that the executive action shocks the court's conscience. See, e.g., id.; Evans, 645 F.3d at 659. See also Benson v. Martin, 8 F. App'x 927, 930 (10th Cir. 2001) (explaining it is a habeas petitioner's burden to establish that the challenged action shocks the conscience).

Admittedly, the "shock the conscience" test is less than precise. However, in giving content to this test, the United States Supreme Court has explained that conduct that is "most likely to rise to the conscience-shocking level is 'conduct intended to injure in some way unjustifiable by any government interest.'" Chavez v. Martinez, 538 U.S. 760, 775 (2003), *abrogated on other grounds by*, Saucier v. Katz, 533 U.S. 194 (2001).

Petitioner fails to show that the Board's reasons for denying him parole shock the conscience or that such reasons constitute behavior that is intended to injure Petitioner in a way that is not justified by any government interest. In this case, all of the reasons appear to further a legitimate government interest. See, e.g., Ledwith v. Brooks, No. Civ.A. 06-611, 2007 WL 804189 (W.D. Pa. March 14, 2007).

Progress by the parole applicant in the process of rehabilitation is a legitimate consideration for the Board and so the Board's denial of parole to Petitioner based upon its opinion that Petitioner needs to participate in and complete additional institutional programs, such as sex offenders classes (for one, such as Petitioner, who was convicted of sexual offenses)

in order to further his rehabilitation is not conscience shocking. See McGinnis v. Royster, 410 U.S. 263, 277 (1973)(it is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole"). Nor does the Board's consideration of Petitioner's lack of remorse in denying him parole shock the conscience. See, e.g., McKune v. Lile, 536 U.S. 24, 32-35 (2002) (plurality). Indeed, as declared in McKune, "[a]cceptance of responsibility is the beginning of rehabilitation." Id. at 47. See also Johnson v. Baker, 108 F.3d 10, 12 (2nd Cir. 1997) ("[a]n inmate who is unwilling to admit to particular criminal activity is unlikely to benefit from a rehabilitative process aimed at helping those guilty of that activity."); Walters v. Ross, No. CV. 92-2290, 1992 WL 398307, at *3 - *4 n.2 (E.D.N.Y. Dec. 21, 1992) (the Court found the parole board's consideration of "petitioner's refusal to accept full responsibility for his crime" was not "arbitrary and capricious").

We do not find that the Board's consideration of the negative recommendation by the Department of Corrections ("DOC") to shock the conscience. See, e.g., Prever v. Barone, 428 F. App'x 218, 220 (3d Cir. 2011) ("Similarly, the PBPP defendants denied parole based on the DOC's negative recommendation, and Prevet's 'minimization of the nature and circumstances of the offense(s) committed.' We agree with the District Court that these are also legitimate penological concerns"). Neither does the Board's reliance on the risk and needs assessment, indicating that Petitioner poses a risk to the community, constitute conscience shocking behavior. Gordon v. Wenerowicz, Civ.A. No. 1:10–CV–1257, 2011 WL 5509538, at *4 (M.D. Pa., Nov. 10, 2011) ("Nor can it be disputed that the denial of parole was not arbitrary and capricious as it was based on the negative recommendation made by the Department of Corrections and various

11

reports, evaluations and assessments of Gordon's risk of recidivism. He has failed to direct the court to any factor relied upon by the Board that could be described as 'conscience shocking.'").

Petitioner has not demonstrated that any of the factors upon which the Board relied in denying him parole shocks the conscience. Accordingly, Petitioner's substantive due process claim is meritless.

### B. Petitioner's Fifth Amendment Rights were Not Violated.

Petitioner seemingly contends that requiring him to admit guilt for the crimes he was convicted of violates his rights under the Fifth Amendment. As the Board points out, this argument is simply wrong as a matter of law. Roman v. DiGuglielmo, 675 F.3d 204, 206 (3d Cir. 2012) ("Roman has refused to participate in the program because, he contends, any such admission would constitute compelled self-incrimination in violation of the Fifth Amendment and would have compromised his then-pending appeal of his sex offense conviction. Based on his refusal to participate, Roman repeatedly has been denied parole. The primary issue before us is whether the State's decision to deny Roman parole, unless he admits his guilt and participates in the sex offender treatment program, violates his Fifth Amendment right against self incrimination. We hold that it does not."). Accordingly, this issue does not afford Petitioner federal habeas relief.

### C. Petitioner's Claim About his Z-Code Status is Not Cognizable.

Petitioner complains about his Z-Code status being taken away from him. No matter what this Court does or refuses to do in relation to Petitioner's Z-Code status, Petitioner's state court conviction or length of sentence would not be affected thereby, and so, Petitioner's claim is simply not cognizable in this Section 2254 habeas petition. Leamer v. Fauver, 288 F.3d 532, 542

(3d Cir. 2002)("whenever the challenge ultimately attacks the 'core of habeas'– the validity of the continued conviction or the fact or length of the sentence– a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate"); Spruill v. Rosemeyer, 143 F. App'x 488, 489 (3d Cir. 2002)("There are no material differences for purposes of this appeal between appellant's claims– that prison officials wrongfully disciplined him by placing him in segregated housing for one month and transferring him to a higher security prison in retaliation for exercising his First Amendment Rights– and the claims in *Leamer*. The appellant challenges the conditions of his confinement, not the fact or duration thereof, and such a challenge could not have been brought by means of a habeas action."); Carson v. Johnson, 112 F.3d 818, 820-21 (5th Cir. 1997)("We have adopted a simple bright line rule for resolving such questions. If a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release, the proper vehicle is a § 1983 suit.") (citations and internal quotations omitted). Accordingly, Petitioner's claim relative to his loss of Z-Code status does not merit federal habeas relief.

## VI. CONCLUSION

For the reasons set forth herein, Petitioner has not established that he is being held in violation of the Constitution, laws or treaties of the United States. Accordingly, the Petition is denied. Because jurists of reason would not find the foregoing debatable, a Certificate of Appealability is denied.

BY THE COURT,

*s/Maureen P. Kelly*
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Date: April 7, 2015

cc:    John W. Ralston, Jr.
BC-6182
SCI Somerset
5706 Glades Pike
Somerset, PA 15501

Counsel of Record Via CM-ECF